IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00971-MEH

BARRY J. SOBEL, M.D., both individually and in his capacity as the parent, next friend, and legal guardian of K.S., an incapacitated person,

    Plaintiff,

v.

ST. MARY'S HOSPITAL & MEDICAL CENTER, INC.,
SCL HEALTH MEDICAL GROUP—GRAND JUNCTION, LLC d/b/a SCL Medical Group of Western Colorado,
ANDREW D. JONES, M.D.,
ELIZABETH BUISKER, D.O., and
LEE SYPHUS,

    Defendants.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiff Barry J. Sobel, M.D. ("Plaintiff"), both in his individual capacity and in his capacity as the parent, next friend, and legal guardian of his daughter, K.S., asserts eight claims for relief regarding his daughter's medical treatment. Defendants St. Mary's Hospital & Medical Center, Inc. ("St. Mary's"), SCL Health Medical Group-Grand Junction, LLC d/b/a SCL Medical Group of Western Colorado ("SCL Medical Group"), Andrew D. Jones, M.D., Elizabeth Buisker, D.O., and Lee Syphus (collectively, "Defendants") filed the present motion to partially dismiss ("Motion"). ECF 32. Specifically, Defendants seek dismissal of Plaintiff's retaliation claims for whistleblower protection under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd (Fifth Claim for Relief), retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* (Sixth Claim for

Relief), retaliation in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (Seventh Claim for Relief), and retaliation in violation of the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-401 *et seq.* (Eighth Claim for Relief). The Motion is fully briefed, and the Court finds that oral argument would not materially assist in its adjudication. For the reasons described herein, the Motion is granted.

## BACKGROUND

**I.      Factual Background**

The following are the materially relevant factual allegations made by Plaintiff in the operative pleading, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff has been employed with St. Mary's and SCL Medical Group since 2011. ECF 25, Am. Compl. ¶ 21. He has admitting privileges at St. Mary's. *Id.* Plaintiff's daughter suffers from a "complicated mental health condition called Iron Triangle Syndrome (ITS), which is a trifecta of autism, catatonia, and psychosis." *Id.* ¶ 23. Plaintiff alleges that K.S. was admitted to the emergency room at St. Mary's on three occasions: January 7–8, 2020, April 2–6, 2020, and October 10, 2020. *Id.* ¶¶ 30, 33, 38–57, 91–95. On each occasion, Plaintiff alleges that K.S. was prematurely and discriminatorily discharged from St. Mary's, and that he engaged in protected conduct by opposing such discharge. *Id.* ¶¶ 205–211, 219, 241, 261. Because he opposed the discharges, Plaintiff alleges he faced the following four adverse retaliatory actions:

(1)     On or around April 6, 2020, Andrew Jones, M.D., verbally reprimanded Dr. Sobel for requesting a consultation with St. Mary's Ethics Team and for opposing St. Mary's premature discharge of K.S.

(2)     On or around April 6, 2020, agents and employees of St. Mary's made a report to Adult Protective Services to coerce Dr. Sobel to desist from opposing St. Mary's discharge of K.S.

2

  (3) Sometime after K.S.'s April 2020 discharge from St. Mary's, Elizabeth Buisker, D.O. and Lee Syphus met with Dr. Sobel to reprimand him for having advocated for K.S.'s care and treatment and having opposed St. Mary's actions.

  (4) On or around June 17, 2020, Andrew Jones, M.D., sent a complaint to the Colorado Medical Board in which he specifically referenced Plaintiff's protected activities in advocating for K.S.'s care and treatment.

*Id.* ¶¶ 222, 244, 264.

## II. Procedural Background

Plaintiff initially filed this suit on April 5, 2021. ECF 1. Waivers of service were returned executed on April 22, 2021, indicating Defendants' answers or other responses were due June 12, 2021. ECF 9–14. Although Defendants did not file anything on June 12, 2021, Plaintiff did file the operative Amended Complaint on June 14, 2021. ECF 25. Defendants filed the present Motion on July 12, 2021. ECF 32. Defendants' Motion indicates that the Amended Complaint was filed as a result of conferral between the parties prior to the filing of any motion to dismiss. Mot. at 1 n.1.

## **LEGAL STANDARDS**

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal

3

conclusions, bare assertions, or merely conclusory. *Id.* at 679. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere

4

possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## ANALYSIS

The parties agree that the elements for the prima facie case of retaliation under the ADA, CADA, the Rehabilitation Act, and EMTALA are the same: a plaintiff must show (1) he engaged in protected activity; (2) plaintiff suffered a materially adverse action by defendants either after or contemporaneous with his protected activity; and (3) there was a causal connection between the protected activity and the adverse action. *Reinhardt v. Albuquerque Publ. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010) (applying same standard to ADA and Rehabilitation Act claims); *Agassounon v. Jeppesen Sanderson, Inc.*, 688 F. App'x 507, 509 (10th Cir. 2017) (analyzing CADA retaliation claim the same as federal retaliation claims); *Elkharwily v. May Holding Co.*, 823 F.3d 462, 470 (8th Cir. 2016) (applying the *McDonnell Douglas* framework to claim under EMTALA).[1] Defendants do not challenge whether Plaintiff engaged in protected activity. Instead, they focus their Motion on whether there was any adverse action and, if so, whether there was a causal connection between that action and the protected activity. While arguing that he has plausibly pleaded each required element of the prima facie case, Plaintiff also contends that his claims survive because they are not limited to an employment relationship. The Court will first

---

[1] In a footnote, Plaintiff suggests that the *McDonnell Douglas* framework does not necessarily apply here because his "claims are based upon Defendants' actions that specifically referenced Dr. Sobel's protected activity." Resp. at 5 n.4. As Plaintiff argues, in the Tenth Circuit, a plaintiff may establish a retaliation claim under either the "direct/mixed motives" approach or through the *McDonnell Douglas* framework. *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011). However, "[t]his circuit has a very high bar for what constitutes direct evidence of retaliation: it does not require any inference or presumption." *E.E.O.C. v. Picture People, Inc.*, 684 F.3d 981, 991 (10th Cir. 2012) (citation omitted). Regardless, as the Court explains in this Order, Plaintiff has failed to establish the prima facie case of his retaliation claims. Therefore, under either approach, Plaintiff fails to state a plausible claim.

5

address the traditional elements of retaliation in the employment context before turning to Plaintiff's alternate theory.

## I.     Retaliation in the Employment Context

### A.     Adverse Employment Action

As an initial matter, Defendants contend that an adverse employment action is defined as "one that significantly alters the compensation, terms, conditions, or privileges of employment or adversely affects the plaintiff's status as an employee." Mot. at 7 (quoting *Widjaja v. Nicholson*, No. 06-cv-00248-EWN-MEH, 2006 WL 2871634, at *8 (D. Colo. Oct. 4, 2006)). While this specific definition may have been the law at one point, it predates the Supreme Court's ruling in *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) in which the Court held that adverse employment actions in the context of Title VII of the Civil Rights Act of 1964 were not limited to actions that affected terms, conditions, or status of employment. As recognized by the Tenth Circuit, "[t]o establish an adverse action, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Reinhardt*, 595 F.3d at 1133.

Plaintiff has alleged four adverse retaliatory actions: (1) a report to Adult Protective Services on April 6, 2020; (2) Dr. Jones' verbal reprimand on April 6, 2020; (3) another verbal reprimand by Dr. Buisker and Mr. Syphus after the April 6, 2020 discharge; and (4) the complaint submitted to the Colorado Medical Board. The Court will address the two verbal reprimand actions together. Additionally, the Court will analyze the report to Adult Protective Services with the complaint to the Colorado Medical Board.

1.      Verbal reprimands

The two instances of verbal reprimands are as follows. On April 6, 2020, Dr. Jones contacted Plaintiff and "admonished him not to oppose K.S.'s immediate discharge." ECF 25 at 14, ¶ 70. When Plaintiff suggested that other arrangements could be made for K.S., Dr. Jones "angrily demanded that [Plaintiff] stop making ethical objections to K.S.'s discharge." *Id.* ¶ 72. From that conversation, Plaintiff "received a clear impression that his job was on the line if he continued to advocate for his daughter's treatment." *Id.* Later in April 2020, after K.S.'s discharge, Dr. Buisker and Mr. Syphus held a meeting with Plaintiff at which they "reprimanded [him] directly for his advocacy and intervention in his daughter's care and indicated that this reprimand was at the behest of Dr. Jones." *Id.* at 14–15, ¶¶ 73–74. Plaintiff alleges generally that he "continues to live in reasonable fear for his job and his professional reputation." *Id.* at 40, ¶ 235.

"The test for what constitutes a materially adverse employment action is an objective one." *Weil v. Carecore Nat., LLC*, 833 F. Supp. 2d 1289, 1297 (D. Colo. 2011) (citing *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1214 (10th Cir. 2008)). "Disciplinary proceedings, such as warning letters and reprimands, can constitute adverse employment actions." *Medina v. Income Support Div., N.M.*, 413 F.3d 1131, 1137 (10th Cir. 2005). While the Tenth Circuit construes "adverse employment actions" liberally, "employment actions consisting of 'mere inconvenience[s] or alteration[s] of job responsibilities . . . will not suffice.'" *Carpenter v. Sch. Dist. No. 1, City and Cnty. of Denver, Colo.*, No. 16-cv-01706-RBJ, 2017 WL 1407041, at *4 (D. Colo. Apr. 20, 2017) (quoting *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004)). Nor do actions that result only in speculative harms constitute adverse employment actions. *Id.* (quoting *Aquilino v. Univ. of Kan.*, 268 F.3d 930, 936 (10th Cir. 2001)). "Acts that carry 'a *significant* risk of humiliation, damage to reputation, and concomitant harm to future employment prospects' may . . . be

considered adverse actions." *Reinhardt*, 595 F.3d at 1133 (quoting *Annett*, 371 F.3d at 1239) (emphasis added).

Here, Plaintiff fails to demonstrate that these verbal reprimands constituted adverse employment actions. Plaintiff alleges that he was verbally reprimanded twice, with the first time consisting of Dr. Jones angrily making demands. From these, Plaintiff received the "impression that his job was on the line." ECF 25 at 14, ¶ 72. But this is a conclusory statement that is not supported by the objective facts in the Amended Complaint. Objectively, based on Plaintiff's allegations, a reasonable person would not feel dissuaded from making or supporting a charge of discrimination based on the verbal reprimands. Neither of the two reprimands involved any significant threat of humiliation, damage to reputation, or harm to Plaintiff's employment. Rather, the actions by Dr. Jones, Dr. Buisker, and Mr. Syphus are nothing more than "informal, vague verbal reprimands." *Carpenter*, 2017 WL 1407041, at *4. Plaintiff must establish more than a "'*de minimis* harm' to or a '*de minimis* impact' upon [his] job opportunities or status." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011). Plaintiff has not done so. *See Duvall v. Putnam City Sch. Dist., Independent Sch. Dist. No. 1 of Okla. Cnty.*, 530 F. App'x 804, 810–11 (10th Cir. 2013) (concluding that a letter of admonishment "did not constitute an adverse action because the letter did not affect [the plaintiff's] work conditions or materially affect her employment").

Additionally, Plaintiff persisted in advocating for his daughter after these verbal reprimands. "[T]he fact that an employee continues to be undeterred in his or her pursuit of a remedy . . . may shed light as to whether the actions are sufficiently material and adverse to be actionable." *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1214 (10th Cir. 2008). In conjunction with the failure to plead more than a "*de minimis*" injury, Plaintiff's continued pursuit of protected

8

activity undermines the notion that the verbal reprimands constituted an adverse employment action. *Weil*, 833 F. Supp. 2d at 1298 (finding that a warning was not an adverse action for a plaintiff who requested FMLA leave three days after receiving a warning).

### 2. Adult Protective Services and Colorado Medical Board

The Court begins by examining the report made to Adult Protective Services. When Plaintiff protested against his daughter's discharge, "the care team coerced [him] by contacting Adult Protective Services to falsely report Dr. Sobel for neglect and abandonment." ECF 25 at 12, ¶ 63. Plaintiff asserts that Adult Protective Services "did not investigate the report, a testimony to its manifest falsehood." *Id.*[2]

In *Mandalapu v. Temple Univ. Hosp., Inc.*, the court held that the plaintiff failed to establish a prima facie case of retaliation against a doctor and hospital because their report to a state medical board was not an adverse employment action. No. 15-5977, 2018 WL 3328026, at *12 (E.D. Pa. July 5, 2018). There, the court noted that Plaintiff had "not pointed to any evidence that the misstatements in [the] report to the Federation of State Medical Boards had any negative consequences, much less consequences that were more than *de minimis*." *Id.* As a result, the court found that the report to the medical board would not have "'. . . dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006)).

Similarly, in *Dick v. Phone Directories Co., Inc.*, the plaintiff alleged that a police report was filed against her in retaliation for bringing claims of harassment. 397 F.3d 1256, 1269 (10th Cir. 2005). The Tenth Circuit, while recognizing that filing false criminal charges can constitute

---

[2] Unlike the other alleged acts of retaliation, Plaintiff does not specifically allege that any of the individually named Defendants were involved in this report. Thus, there cannot be liability as to them from this alleged conduct.

an adverse action, held that the mere act of filing a report did not constitute an adverse action. *Id.* Because the plaintiff did not have to stand trial or face formal charges, the Tenth Circuit reasoned that the police report did not "'carr[y] a significant risk of humiliation, damages to reputation, [or] a concomitant harm to future employment prospects.'" *Id.* (quoting *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996)).

As was the case in both *Mandalapu* and *Dick*, Plaintiff here suffered no adverse consequences from the alleged report to Adult Protective Services. Plaintiff readily admits that Adult Protective Services did not even investigate the report. ECF 25 at 12, ¶ 63. Although Plaintiff points to this as evidence of the falsehood of the report, the mere falsity of the report is insufficient to state a plausible claim of retaliation. *Dick*, 397 F.3d at 1269. Plaintiff must demonstrate more than a *de minimis* impact on his ability to bring or support a charge of discrimination. *C.R. England, Inc.*, 644 F.3d at 1040. Plaintiff has not done so with respect to the report to Adult Protective Services.

The same is true of the complaint to the Colorado Medical Board. Plaintiff alleges that as a result of the complaint, he was "forced to retain an attorney to defend his professional reputation." ECF 25 at 17, ¶ 86. Yet, Plaintiff further contends that "[o]n September 3, 2020, the Medical Board dismissed [the] complaint in its entirety." *Id.* ¶ 87. Thus, like in *Mandalapu* and *Dick*, Plaintiff has not explained how he faced more than *de minimis* consequences from this complaint. In other words, Plaintiff has not plausibly pleaded how the "reasonable employee would have found the challenged action *materially* adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Reinhardt*, 595 F.3d at 1133 (emphasis added).

Finally, as the Court discussed with the verbal reprimands, Plaintiff persisted in advocating for his daughter after both the report to Adult Protective Services and the complaint to the Colorado Medical Board. Combined with the failure to plausibly plead more than a "*de minimis*" impact, Plaintiff's continued pursuit of protected activity undermines the notion that these actions constituted an adverse action. *Somoza*, 513 F.3d at 1214; *Weil*, 833 F. Supp. 2d at 1298.

Accordingly, for the reasons explained, the Court finds that Plaintiff has not plausibly pleaded that he suffered a materially adverse action, either individually or in the aggregate, sufficient to state a plausible claim for retaliation. *See Carpenter*, 2017 WL 1407041, at *4. p

B.     Causal Connection

Additionally, the complaint to the Colorado Medical Board is not plausibly pleaded as to the causation element of a retaliation claim. "'A retaliatory motive may be inferred when an adverse action closely follows protected activity. However, unless the [adverse action] is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation.'" *Winston v. Ross*, 725 F. App'x 659, 665 (10th Cir. 2018) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)). Here, Plaintiff's protected activity occurred on January 8, April 6, and October 10, 2020. ECF 25 at 37, ¶ 219. Dr. Jones submitted the complaint to the Colorado Medical Board on June 17, 2020. *Id.* at 15, ¶ 76. Hence, over ten weeks elapsed between Plaintiff's protected activity on April 6 and the submission of the complaint. The Tenth Circuit has held that a period of three months is too long to presume causation. *Bekkem v. Wilkie*, 915 F.3d 1258, 1271 (10th Cir. 2019); *Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007). Although the time elapsed in this case is not quite three months, a period of over ten weeks is "probably too [long] . . . to establish causation by temporal proximity alone." *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) (finding a period

of two months and one week to be too long to establish causation). Therefore, Plaintiff needs to rely on additional evidence to establish causation.

To do so, Plaintiff points to the fact that the complaint mentions Plaintiff's protected activity.[3] In the complaint, Dr. Jones states, in relevant part,

> Dr. Sobel has a pattern of participating as a physician in the treatment of his minor child, dating back to 2012. This has occurred in many ways and is manifest in part by 20 separate entries in the minor child's electronic health record. Dr. Sobel's participation includes creating notes in the chart, ordering labs and medications, referring to other physicians, and adding detail to the problem list. I have spoken with him to discourage this practice and referenced the guidance from the Colorado Medical Board. During a recent hospitalization in 2020, Dr. Sobel was very demanding regarding discharge plans for his daughter with which he did not agree. This was incredibly challenging for the hospital staff and care team as he was too highly enmeshed in the situation and was playing a confusing role for a parent, inserting medical discussions and physician-type communication.

ECF 25-2 at 5. The complaint references guidance from the Colorado Medical Board against permitting physicians to treat close family members. That guidance, which is attached to the Motion as an exhibit,[4] provides that "it is the position of the Board that, except for minor illnesses and emergencies, licensees should not treat, medically or surgically, or prescribe for themselves, their family members or others with whom they have significant emotional relationships." ECF 32-1; Colo. Med. Bd. Policy No. 40-18, Self-Treatment and Treatment of Family Members and

---

[3] Plaintiff attaches the complaint to the Amended Complaint. The Court may consider it without converting the motion to a motion for summary judgment. *Commonwealth Prop. Advocates, LLC v. Mortgage Electronic Registration Systems, Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011) (recognizing that a court may consider "the attached exhibits and documents incorporated into the complaint by reference" on a motion to dismiss).

[4] The Court notes that Plaintiff does not object to the use of this guidance. Regardless, the Court can consider the contents of the guidance (although not the truth of the contents) at this time because the Court can take judicial notice of the Colorado Medical Board's guidelines since they are public documents whose authenticity cannot be reasonably questioned. *Wildearth Guardians v. Pub. Service Co. of Colo.*, 698 F. Supp. 2d 1259, 1263 (D. Colo. 2010) (noting court can take "judicial notice of . . . facts which are a matter of public record") (citation omitted).

Others with whom Significant Emotional Relationships Exist (last revised November 21, 2019), available at https://dpo.colorado.gov/Medical/Laws.

Furthermore, under Colorado law, "[l]icensees have the duty to report to the board any licensee known, upon information and belief, to have violated any of the provisions of section 12-240-121(1)." Colo. Rev. Stat. § 12-240-125. Thus, licensees have a duty to report violations of "[p]rescribing, distributing, or giving to a family member or to oneself except on an emergency basis any controlled substance." Colo. Rev. Stat. § 12-240-121(1)(q). The Colorado Medical Board's guidelines specifically reference this provision. ECF 32-1.

In the Amended Complaint, Plaintiff contends that he "has never provided any hospital care to K.S. beyond his role as her guardian and patient advocate." ECF 25 at 16, ¶ 81. However, Plaintiff admits that he "has renewed medications when other providers were not available, ordered lab tests approved by K.S.'s medical providers, or helped to monitor drugs that are potentially toxic to the kidneys, which is [Plaintiff's] expertise as a nephrologist." *Id.* The crux of Dr. Jones's complaint focuses on such conduct. For instance, Dr. Jones attaches a list of twenty separate entries in K.S.'s electronic health record, showing Plaintiff "creating notes in the chart, ordering labs and medications, referring to physicians, and adding detail to the problem list." ECF 25-2 at 5–6. In only one sentence does Dr. Jones mention that Plaintiff was "very demanding regarding" K.S.'s discharge plans. *Id.* at 5. The mere mention of Plaintiff's "challenging" actions as one of many concerns is insufficient to establish causation. Generally, more evidence is required. *See Minner v. Office Depot, Inc.*, No. 19-cv-02934-LTB-STV, 2020 WL 3118519, at *5 (D. Colo. June 11, 2020) (finding causal connection in ADA retaliation case from three separate pieces of evidence,

including comments from employer that the plaintiff "was sick too much" and asking "why won't [he] retire?").[5]

## II. Retaliation in the Non-Employment Context

Plaintiff argues that none of his claims arise exclusively from an employment theory. Resp. at 9. That is, even if you remove the employment relationship in this case, Plaintiff's claims "would still be viable" under a "public accommodations/services theory." *Id.* In support of this contention, Planitiff cites to *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1181 (11th Cir. 2003). There, the Eleventh Circuit, as a matter of first impression, held that a plaintiff alleging retaliation in the public services or accommodations contexts of the ADA "need not demonstrate an adverse employment action[,] . . . only that some type of action occurred that sufficiently qualifies as adverse under the circumstances of the case." *Id.* Plaintiff argues the same is true under EMTALA. Resp. at 10 (citing 42 U.S.C. § 1395dd(i)).

Plaintiff has not cited, and the Court has not found, authority in which the Tenth Circuit has adopted the Eleventh Circuit's holding in *Shotz*.[6] However, even if the Court adopted the *Shotz* standard, Plaintiff fails to state a plausible claim. Under *Shotz*, the Eleventh Circuit recognized

---

[5] The Court also notes that finding Plaintiff established causation here likely would put physicians and hospitals in a Catch-22 when dealing with patients and patients' parents or guardians who are themselves physicians. Treating physicians would probably feel prohibited from reporting alleged ethical violations in fear of a claim of retaliation against them. The parties address this dilemma in their briefing in the context of the *Noerr-Pennington* doctrine. Mot. at 10; Resp. at 12. Because the Court finds that the claims for retaliation regarding the complaint to the Colorado Medical Board are not plausibly pleaded on other grounds, the Court does not address the parties' arguments.

[6] The unique facts of this case present a different question of whether *Shotz* would be applicable. In *Shotz*, no employment relationship was ever implicated. Here, there is no dispute that an employment relationship existed. It is an open question whether a case like this, in which there are both employment and public services aspects, must be analyzed both under typical retaliation analyses *and* the standard expressed in *Shotz* or whether an analysis under the employment relationship suffices.

14

that the retaliatory "conduct must be material to be adverse in this context." *Shotz*, 344 F.3d at 1182–83. Although it is not a particularly high bar, the focus is still on whether the conduct runs "the risk of chilling legitimate opposition to unlawful and discriminatory practices, and 'could stifle [a person's] willingness to file charges of discrimination.'" *Id.* at 1183 (quoting *Widemand v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998)). The Court has already found that none of the four allegedly retaliatory actions in this case were materially or significantly adverse. It matters not whether they were in the employment context.[7]

### III. Dismissal With Prejudice

"In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely 'if it appears at all possible that the plaintiff can correct the defect.'" *Triplett v. LeFlore Cty., Oklahoma*, 712 F.2d 444, 446 (10th Cir. 1983) (quoting 3 Moore's Federal Practice, ¶ 15.10 & n. 2 (1983)). However, "[a]t least outside of the pro se context, when a litigant fails to put the district court on adequate notice—in a legally cognizable manner—of his request for leave to amend, then the district court will not be faulted for failing to grant leave to amend." *Doe v. Heil*, 533 F. App'x 831, 847 (10th Cir. 2013). Pursuant to Fed. R. Civ. P. 15(a), "[t]he grant or denial of an opportunity to amend is within the discretion of the Court." *Maloney v. City of Pueblo*, 323 F.R.D. 358, 360 (D. Colo. 2018). As relevant here, it is within the court's discretion to deny leave to amend after a plaintiff has already been given "one opportunity to amend [its] complaint." *Bekkem*, 915 F.3d at 1275–76. Here, Plaintiff is represented by counsel, and Plaintiff already amended his Complaint once, directly in anticipation of a motion to dismiss. Mot. at 1 n.1. Plaintiff has not filed a motion to amend again. If the Court were to grant leave now, it would be acting

---

[7] The parties also dispute whether Plaintiff's claims can be asserted against individuals. Mot. at 15; Resp. at 21. Because the Court finds that Plaintiff has not plausibly pleaded the prima facie case of any of his retaliation claims, the Court need not consider this alternative basis for dismissal.

15

*sua sponte*.  The Court will not do so.  *Id.* ("[W]e will not upset the district court's dismissal with prejudice on the grounds that it failed sua sponte to give [the plaintiff]—who was represented by counsel—an opportunity to file an amended complaint."); *see Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999) ("Although leave to amend should be liberally granted, a trial court is not required to sua sponte grant leave to amend prior to making its decision [to dismiss]."). Accordingly, Defendant's retaliation claims are dismissed with prejudice.

## CONCLUSION

For the reasons described, Defendants' Motion [filed July 12, 2021; ECF 32] is **granted**. Plaintiff's Fifth, Sixth, Seventh, and Eighth claims are dismissed with prejudice.

Entered and dated this 2nd day of December, 2021, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

16